UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **PYRAMID INSTRUMENTATION & ELECTRIC CORP., ET AL.** | : | **DOCKET NO. 17-cv-1358** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **DWAYNE KEVIN HEBERT, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss [doc. 8] filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure by defendants Galaxy NA, LLC ("Galaxy") and Erik Morgan (collectively, "defendants")[1]. Plaintiffs Pyramid Instrumentation & Electric Corporation and PTW Energy Services, Incorporated (collectively, "plaintiffs"/"Pyramid") oppose the motion [doc. 11] and the defendants have filed a reply [doc. 12]. Accordingly, the matter is now ripe for review.

**I.**
**BACKGROUND**

This matter arises as a dispute between defendants Dwayne Kevin Hebert, Erik Morgan, and their employer, Galaxy; and Hebert and Morgan's former employer, Pyramid.[2] Plaintiffs

---

[1] This collective is used for ease of reference, though with full acknowledgment of the fact that defendant Dwayne Kevin Hebert did not join in the Motion to Dismiss.
[2] As an initial matter, defendants object to plaintiffs' use of a collective identification and their failure to identify which entity, Pyramid Instrumentation & Electric or PTW Energy Services, was the employer at relevant times in the complaint. Doc. 8, att. 1, pp. 8–9. In their response, plaintiffs clarify that Pyramid Instrumentation & Electric was the employer and that PTW Services is its successor in interest as of February 2014. Doc. 11, pp. 8–9. For ease of reference we refer to the business, in all capacities in which it appears in this litigation, simply as "Pyramid." We also consider all of plaintiffs' allegations of deficient pleading based on confusion between these two entities to be addressed by this clarification.

allege that defendants improperly competed against them while Hebert and Morgan were still employed by Pyramid. Doc. 1, pp. 1–8. Namely, they contend that Hebert and Morgan improperly diverted Pyramid employees, customers, and resources to Galaxy while still employed by Pyramid. *Id.*

Plaintiffs filed a complaint against Hebert, Morgan, and Galaxy in this court, raising several claims under state and federal law. *Id.* at 1–17. Galaxy and Morgan now bring the instant motion to dismiss, alleging that plaintiffs have failed to state a claim on which relief can be granted under several of their causes of action. Doc. 8, att. 1. They also contend that, because 28 U.S.C. § 1331 is the sole basis cited for this court's original jurisdiction [see doc. 1, p. 2], this court will be deprived of subject matter jurisdiction once the federal law claims are dismissed. *Id.*

## II.
## LAW & ANALYSIS

### A. *Rule 12(b)(6) Standard*[3]

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal*

---

[3] Ordinarily, the court considers a jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In this matter, however, the jurisdictional attack is dependent on the court first granting relief under Rule 12(b)(6) by dismissing plaintiffs' federal causes of action. *See* doc. 8, att. 1. Accordingly, we must first determine whether there is any merit to the 12(b)(6) motion with respect to the federal causes of action before we consider the jurisdictional attack. If the 12(b)(6) motion is denied as to **either** federal cause of action, we will consider the 12(b)(1) motion moot.

-2-

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor will a complaint suffice if it tends naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (cleaned up). Instead, the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). Accordingly, the court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## B. Review of Claims

### 1. CFAA violation

Defendants first challenge plaintiffs' claims under Count I of the complaint, which is based on violations of the Computer Fraud and Abuse Act ("CFAA"). *See* doc. 1, pp. 8–9. This act prohibits, *inter alia*, unauthorized access of a "protected computer" for the purposes of obtaining information, causing damage, or perpetuating a fraud.[4] 18 U.S.C. § 1030(a). Plaintiffs' CFAA claims arise from the following factual allegations:

> 20. On July 27, 2017, a person using Hebert's Pyramid computer accessed and copied Pyramid's confidential and proprietary property, including, among other things, Pyramid's quality assurance and quality control manuals created specifically for Pyramid's customers. Upon information and belief, that person was Hebert. Upon information and

---

[4] Although the CFAA is a criminal statute, it provides a private right of action under § 1030(g) if at least one of five factors in § 1030(c)(4)(A)(i) is present. Plaintiffs have alleged that they meet one of these factors, having spent over $5,000 investigating the wrongful acts allegedly committed by Hebert. Doc. 1, p. 9. Defendants challenge this estimate of damages as unreasonable, but fail to show that plaintiffs' assertion of same is insufficient at the pleading stage. Doc. 8, att. 1, pp. 18–19.

> belief, Hebert provided Morgan and/or Galaxy with Pyramid's confidential and proprietary information, and Hebert, Morgan and/or Galaxy are now using Pyramid's confidential and proprietary information.

Doc. 1, p. 7.

Through these actions, they allege that Hebert violated the CFAA by "knowingly, and with intent to defraud Pyramid, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud . . . ." *Id.* at 8; *see* 18 U.S.C. § 1030(a) (elements of CFAA violations).

Defendants maintain that the allegations in the complaint "amount to little more than a formulaic recitation of the elements of the cause of action." Doc. 8, att. 1, p. 16 (internal quotations omitted). Specifically, they complain of plaintiffs' failure to identify which computer or computer system is a "protected computer" within the meaning of the CFAA, or to show that Hebert's access to such a computer was unauthorized. *Id.* at 16–17. As plaintiffs assert, however, the allegations in Paragraph 20, incorporated by reference into the CFAA cause of action [see doc. 1, p. 8 ¶ 23], answer all of these questions.[5] The heightened pleading standards for a fraud claim under Federal Rule of Civil Procedure 9(b) are met by the allegation that Hebert used this access to provide Morgan and/or Galaxy with "confidential and proprietary information," and the identification of some of this information in the same paragraph. The litany of additional questions raised by defendants in their reply [doc. 12, p. 5] may be used to probe the sufficiency of these claims in discovery, but the mere fact that defendants can ask such questions is not enough to show that plaintiffs have failed to provide a **short** and plain statement, as set forth under Rule 8, showing a plausible claim for relief.

---

[5] As plaintiffs note, the Fifth Circuit has recognized that "[a]ccess to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded." *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010).

### *2. DTSA and LUTSA claims*

In Counts III and IV, plaintiffs raise claims for misappropriation of trade secrets under state and federal law. Doc. 1, pp. 10–12. Defendants allege a failure to state a claim under both of these counts. We consider them together.

The federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. Rev. Stat. § 51:1431 *et seq.*, both allow a plaintiff to recover damages based on misappropriation of trade secrets. 18 U.S.C. § 1836; La. Rev. Stat. § 51:1433. In order to state a claim under either act, a plaintiff must allege (1) the existence of a trade secret and (2) misappropriation of the trade secret by another. *Source Prod. & Equip. Co., Inc. v. Schehr*, 2017 WL 3721543 at *2–*6 (E.D. La. Aug. 29, 2017). To state a claim under the DTSA, a plaintiff must also allege the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *Id.* at *2 (citing 18 U.S.C. § 1836(b)(1)).

A "trade secret" under both DTSA and LUTSA includes scientific and technical information that (1) derives independent economic value, real or potential, from not being generally known or readily ascertainable by others who can obtain economic value from the disclosure or use of the information and (2) is the subject of the owner's reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839(3); La. Rev. Stat. § 51:1431(4). Here plaintiffs allege based on the incorporation of Paragraph 20, supra, that Hebert violated DTSA and LUTSA by copying Pyramid's quality assurance and quality control manuals. At Paragraphs 42 and 43 of the complaint, they also allege generally that Pyramid's "confidential and proprietary information is not readily ascertainable through proper means by persons not employed by, and under a confidentiality obligation to, Pyramid" and that this "confidential and proprietary information" is

of great value to Pyramid and would give an unfair advantage to any competitor who improperly acquired it. *Id.* at 11.

Defendants maintain that plaintiffs have not provided enough factual allegations to suggest that the manuals have a value in not being generally known, or that plaintiffs make an effort to keep them secret.[6] To this end they note that the manuals, "created specifically for Pyramid's customers" according to Paragraph 20 of the complaint, are presumably shared with those customers. They also maintain that plaintiffs have failed to allege misappropriation based on the fact that Hebert was then employed at Pyramid.

We disagree as to the misappropriation element, noting that under Paragraph 20 of the complaint plaintiffs have clearly alleged that on a certain date Hebert exceeded his authority as a Pyramid employee to use/access such materials and that under Paragraph 10 they also allege that he was forbidden from aiding Pyramid's competitors under his employment contract. Doc. 1, pp. 3, 7. We agree, however, with respect to the "trade secrets" element – plaintiffs' statement that of the industry in which they are involved at Paragraph 8, their formulaic recitation of the definitions of a trade secret at Paragraphs 42 and 43, and their repeated use of the term "confidential and proprietary" with respect to the manuals are not enough to show the independent economic value of the manuals or the efforts made by Pyramid to maintain their secrecy. *Cf. Schehr*, 2017 WL 3721543 at *3 (finding trade secret claim was sufficiently pleaded under DTSA where plaintiffs identified the specific kinds of technologies allegedly disclosed and described their efforts to

---

[6] Defendants also rely on *StoneEagle Svcs., Inc. v. Valentine*, 2013 WL 9554563 (N.D. Tex. Jun. 5, 2013), and *Zenimax Media, Inc. v. Oculus Vr, Inc.*, 2015 WL 11120582 (N.D. Tex. Feb. 13, 2015) for the contention that "[f]ederal courts have repeatedly specifically defined and repeatedly stated what will not suffice as reasonable particularity of an alleged trade secret." Doc. 8, att. 1, pp. 20–21. Both of these decisions, however, involved requests for pre-discovery identification of trade secrets rather than a challenge under Rule 12(b)(6). They therefore have no relevance to the sufficiency with which trade secrets must be identified in a complaint in order to withstand a motion to dismiss for failure to state a claim.

maintain the secrecy of this information). Accordingly, defendants have carried their burden due to plaintiffs' failure to plead an element of their claim.

In their response to these motions plaintiffs request that they be given leave to amend the complaint in the event that the court finds that any cause of action requires additional factual allegations. Doc. 11, p. 2. Plaintiffs are free to seek leave of court to amend should they find it necessary to do so and proper consideration of the request will be given at that time.

### 3. *LUTPA claim*

Under Count V, plaintiffs raise claims under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1401 *et seq.* Doc. 1, pp. 12–13. They maintain that defendants engaged in unfair competition with Pyramid, and that their conduct, including alleged misappropriation Pyramid employees, confidential information, and trade secrets, amounted to unfair trade practices under Louisiana law. *Id.*

LUTPA prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce" and grants a right of action to "[a]ny person who suffers any ascertainable loss" from a violation of that statute. La. Rev. Stat. §§ 51:1405(A), 1409(A). Courts decide on a case-by-case basis what conduct falls within the statute's prohibition, and the Louisiana Supreme Court acknowledges that the range of prohibited practices under LUTPA "is extremely narrow." *Cheramie Svcs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1060 (La. 2010). The act's prohibitions do not extend to "sound business practices, the exercise of permissible business judgment, or appropriate free transactions." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). Instead, the plaintiff must show that the conduct "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie*, 35 So.3d at 1059. Additionally, LUTPA is not simply an alternative remedy for a breach of contract

claim. *First American Bankcard, Inc. v. Smart Bus. Technology*, 178 F.Supp.3d 390, 406 (E.D. La. 2016) (citing *Turner*, 989 F.2d at 1422). It instead extends only to "egregious behavior" or cases in which the breach involves "deceptive and unethical undertones." *Id.* (quoting *Turner*, 989 F.2d at 1422; *Tubos de Acero de Mex. SA v. Am. Int'l Inv. Corp.*, 292 F.3d 471 (5th Cir. 2002)).

Defendants maintain that plaintiffs' allegations fall short of this standard, and note that "[a]s a matter of law, an employee's involvement with a competing entity, including the solicitation of business and the hiring of employees prior to the termination of his current employment, is not an unfair trade practice." Doc. 8, att. 1, p. 24. To this end they cite two cases from the Louisiana courts of appeals. *Id.* In both of these matters, however, the courts specifically rejected the misappropriation of trade secrets claims before also finding that there were no unfair trade practices. *See Creative Risk Controls, Inc. v. Brechtel*, 847 So.2d 20, 25–26 (La. Ct. App. 5th Cir. 2003); *United Grp. of Nat'l Paper Distrib., Inc. v. Vinson*, 666 So.2d 1338 (La. Ct. App. 2d Cir. 1996). Neither involved any pending claims of fraud or deceit, and in fact the court noted in *Vinson* that "[f]raud, deceit, and misrepresentation constitute deceptive practices under [LUTPA]." 666 So.2d at 1346.

This case, with viable CFAA claims and potentially viable misappropriation of trade secrets claims, subject to plaintiffs' opportunity to amend, is therefore distinguishable. The allegations from Paragraph 20 above, as repeated under the LUTPA cause of action, provide a sufficient basis for plaintiffs' claims.

### 4. Breach of fiduciary duty

In Count VI of the complaint, plaintiffs allege that defendants Hebert and Morgan are liable under Louisiana law for breaching a duty of loyalty owed to Pyramid during the course of their employment. Doc. 1, pp. 13–14. Defendants maintain that these claims are deficient because

"[w]hile an employee owes a duty of **faith and loyalty** to his employer under certain circumstances, that duty is limited to good faith (i.e. **fidelity and loyalty**) unless the employee is also an agent and able to bind his employer." Doc. 8, att. 1, p. 25 (emphasis added); *see also Cenla Phys. Therapy & Rehab. Agency, Inc. v. Lavergne*, 657 So.2d 175, 177 (La. Ct. App. 3d Cir. 1995) (citing *ODECO Oil & Gas Co. v. Nunez*, 532 So.2d 453 (La. Ct. App. 1st Cir. 1988)) (describing an employee's duty to the employer). The parties thus appear to agree about the duty of loyalty at issue here, and defendants have made no challenge to the manners in which they are alleged to have breached such a duty under this claim. Accordingly, defendants fail to carry their burden on this motion.

### 5. *Tortious interference with business relations*

In Count VII of the complaint plaintiffs raise a claim based on interference with business relations, alleging that Hebert and Morgan acted to prevent Pyramid's customers from continuing to do business with the company and to prevent Pyramid's employees from continuing to work there. Doc. 1, p. 14. In their general factual allegations, they allege that Hebert and Morgan used Pyramid resources and employees to "siphon work to Galaxy, when said work would have otherwise . . . gone to Pyramid." *Id.* at 4–7.

Defendants maintain that this claim must fail because plaintiffs have not identified a contract in which they allegedly interfered. Doc. 8, att. 1, pp. 26–27. As plaintiffs observe, however, defendants have confused two separate causes of action – interference with a contract and tortious interference with business. Claims based on interference with a contract are brought against corporate officers, and a plaintiff must begin by alleging "the existence of a contract or a legally protected interest between the plaintiff and the corporation." *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989). In a tortious interference with business claim, on the

other hand, plaintiff is only required to "show by a preponderance of evidence that the defendant improperly and maliciously influenced others not to deal with plaintiff." *Hardy v. Easterling*, 113 So.3d 1178, 1187 (La. Ct. App. 2d Cir. 2013). Accordingly, plaintiffs' failure to identify a contract does not defeat their tort claim above.

### 6. Conversion

In Count VIII of the complaint, plaintiffs allege that defendants are liable for the conversion of "valuable assets, employees, business opportunities, and customer relationships belonging to" Pyramid. Doc. 1, p. 14. "[A]ny wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985).

Defendants maintain that this claim must be dismissed due to the plaintiffs' failure to identify the specific items converted. Doc. 8, att. 1, pp. 27–28. The factual allegations, however, which are incorporated by reference under this count, specifically described defendants' allegedly wrongful use of, inter alia, Pyramid equipment and trucks by defendants and usurpation of specific business opportunities. Doc. 1, pp. 4–7. Defendants cannot carry their burden of showing plaintiffs' failure to state a claim under this cause of action, because plaintiffs have clearly identified other items that would be susceptible of conversion.

### III.
#### CONCLUSION

Defendants have not carried their burden with respect to any of the above claims. Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss under Rule 12(b)(6) [doc. 8] be **GRANTED** with respect to the DTSA/LUTSA claims and **DENIED** in all other respects. **IT IS ALSO RECOMMENDED** that the Motion to Dismiss under Rule 12(b)(1) [doc. 8] be **DENIED AS MOOT.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 14th day of March, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE